# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHRETTA TAYLOR, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     3:05-cv-01039 (WWE) |
| | : |
| WATERBURY BOARD OF EDUCATION, | : |
| | : |
| Defendant. | : |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action arises from plaintiff Shretta Taylor's claims that defendant Waterbury Board of Education (the "Board") violated her right to equal protection pursuant to 42 U.S.C. sections 1981 and 1983 and Title VII of the Civil Rights Act of 1964 and created an abusive, offensive and hostile work environment based on racial discrimination. Plaintiff also claims that under Connecticut state law, defendant negligently or intentionally inflicted emotional distress. Specifically, plaintiff asserts that the Board discriminated against her by failing to promote her to a Middle School House Principal position in June 2003, treated her differently than similarly situated employees and exposed her to a continuing pattern of conduct based on racial discrimination. Defendant moves for summary judgment. For the following reasons, defendant's motion will be granted.

1

## BACKGROUND

Plaintiff, who is an African American, has been employed by defendant Board since 1985. She was a fourth grade teacher at Driggs Elementary School from 1985 to 1992. She then transferred to West Side Middle School, where she taught seventh grade from 1992 to 1999. While at West Side, plaintiff served as an interim Seventh Grade Teaching Vice Principal and was assigned to fill in for the school administrator, as necessary, in his or her absence. Plaintiff was also acting Seventh Grade House Principal at West Side for over one year, covering for a retiring administrator. In 1999, plaintiff moved to Wallace Middle School, where she taught eighth grade math from 1999 to 2001. While at Wallace, plaintiff was also a Teaching Vice Principal for the 1999-2000 academic year, an after school coordinator, and was appointed acting Eighth Grade House Principal for four months during an extended absence of the permanent House Principal.

In 2001, plaintiff transferred to Hopeville Elementary School, where she served as acting Supervisory Vice Principal from September 2000 until February 2001. She returned to Wallace Middle School in February 2001. She has been employed by defendant since.

In June 2003, plaintiff applied for a position as a Middle School House Principal. There were approximately twenty-four applicants for two vacancies. Eight of the applicants were granted interviews. Plaintiff was one of the eight candidates chosen for an interview.

The interviews were conducted by three administrators: David Snead, Superintendent of Schools, Assistant Superintendent Anne Marie Cullinan and then Board President Mary White.[1] The interview consisted of ten questions with each question assessed on a five-point scale for a maximum score of 50. The interviewees were scored individually by the panel and the three scores were added together to arrive at a final ranking.

The top two candidates, Jacqueline Gilmore and Anthony Agostine, were awarded the House Principal positions.[2] Gilmore had been the first ranking applicant, receiving a total score of 140; Agostine, the second ranked candidate, achieved a total score of 138. Plaintiff's final score was 77 and she was ranked last out of the eight candidates.

In August 2003, an additional Middle School House Principal position became available and Gary Huckins, who had participated in the June interviews, was appointed. Huckins had received a total score of 79.5 and was sixth in the rankings.[3]

Plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") on August 12, 2003, alleging that the Board had discriminated against her throughout the June 2003 interview process. The CHRO dismissed plaintiff's complaint and subsequently denied plaintiff's request for reconsideration.

---

[1] Snead is an African American; both Cullinan and White are Caucasians.

[2] Both Gilmore and Agostine are Caucasians.

[3] Huckins is also a Caucasian.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 24.

**1. Racial Discrimination**

In order to assert a claim of racial discrimination in the employment context, plaintiff must establish a prima facie case of such discrimination. To accomplish this, plaintiff must show: 1) membership in a protected class; 2) qualifications for the position; 3) an adverse employment action; and 4) circumstances surrounding the action that give rise to an inference of discrimination. Collins v. New York City Transit Authority, 305 F.3d 113, 118 (2d Cir. 2002); See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).[4]

The standard for establishing a prima facie case of racial discrimination is minimal. It has been described as "de minimus" and "not onerous." Howley v. Town of Stratford, 217 F.3d 141, 150 (2d Cir. 2000). Because of this standard and for the purposes of ruling on this motion for summary judgment, the Court assumes that plaintiff has established a prima facie case of racial discrimination based on defendant's failure to promote her in June 2003 to Middle School House Principal.[5]

After plaintiff presents a prima facie case, the burden shifts to the employer to provide an explanation that the relevant employment action was taken for a legitimate, nondiscriminatory reason. Plaintiff must then present evidence that the proffered explanation for the action is a mere pretext for discrimination and that the actual reason for the employment decision was one of intentional discrimination. St. Mary's Honor

---

[4]The elements of a claim of employment discrimination pursuant to Title VII also apply to a claim under 42 U.S.C. section 1983. St. Mary's Honor Center, et al. v. Hicks, 509 U.S. 502, 506 n. 1 (1983).

[5]In her deposition, plaintiff limited her claim of racial discrimination to the interview process in June 2003. Plaintiff's Depo., p. 104.

Center, 509 U.S. at 515. Plaintiff may accomplish this by either convincing the court that the employer was more likely motivated by a discriminatory reason or that the employer's proffered justification is not credible. Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Pender v. State of New York Office of Mental Retardation and Developmental Disabilities, 2006 WL 2013863, *4 (E.D.N.Y.).

In response to plaintiff's satisfaction of the first prong of the test for racial discrimination, defendant asserts that its reason for the employment decision was legitimate and nondiscriminatory. Defendant argues that plaintiff was not promoted in 2003 because of her poor performance on the interviews conducted by the three-person interview panel. Plaintiff counters that this reasoning is pretextual and that her scores were discriminatory in nature, suggesting that the scores were reflective of defendant's discriminatory animus towards African Americans.

The Court must afford the employer an element of discretion as to its hiring decisions. Even if plaintiff's skills and experience were commensurate with the other applicants, which the Court finds is not true in the present case, an employer may "choose among equally qualified candidates, provided the decision is not based upon unlawful criteria." Burdine, 450 U.S. at 259. In general, the Court should not second guess business decisions, and evidence that an employer merely used poor business judgment as to an employment decision is insufficient to establish a genuine issue of fact as to the credibility of the employer's reasons. Dister v. Continental Group, Inc., 859 F.2d 1108, 1116 (2d Cir. 1988). A plaintiff may defeat summary judgment by

demonstrating that the employer's business decision was so lacking in merit as to call into question its genuineness.  See Gerardi v. Hofstra University, 897 F.Supp. 50, 58 (E.D.N.Y. 1995) (plaintiff made a showing sufficient to bar summary judgment where her qualifications may have been superior to two younger applicants who were hired, as well as to ten candidates who received call-back interviews).

As explained, supra, plaintiff was ranked last in the June 2003 interviewing process. In her deposition, plaintiff conceded that the three individuals appointed to House Principal scored higher and had more permanent administrative experience than she did.[6]  The first two candidates hired had the first and second highest scores and the third successful applicant, Huckins, was ranked sixth.[7]  These facts are not challenged by plaintiff, but she argues that the results of the test were skewed as a result of racial bias and that she could have scored higher than Huckins had such bias not existed.  She specifically contends that her score would have been higher than Huckins' had the panel disregarded the scores given by Cullinan and had only counted the scores by Snead and White.  Plaintiff presents no facts or evidence to support this claim.  Mere speculative allegations are not sufficient to survive summary judgment.  Burgess v. County of Rensselaer, 2006 WL 3729750, *10 (N.D.N.Y.).  The Court will grant summary judgment on this ground.

---

[6] Up to June 2003, all of plaintiff's administrative experience had been on a temporary basis.

[7] Huckins was next in line for promotion because candidates three, four and five had already taken other positions by the time the third and final job became available.

7

## 2. Hostile Work Environment

A hostile work environment exists in violation of Title VII where the workplace is permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). To prevail on a hostile work environment claim, the plaintiff must show both: 1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive so as to alter the conditions of her employment, and 2) that a specific basis exists for imputing to the employer the conduct that created the hostile environment. Briones v. Runyon, 101 F.3d 287, 291 (2d Cir. 1996). Relevant factors include: 1) the frequency of the discriminatory conduct; 2) the severity of the conduct; 3) whether the conduct is physically threatening or humiliating or merely an offensive utterance; and 4) whether the conduct unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 23.

"The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate that she personally considered the environment hostile, and that the environment rose to some objective level of hostility." Leibovitz v. New York City Transit Authority, 252 F.3d 179, 188 (2d Cir. 2001). Isolated remarks or occasional episodes of harassment will not merit relief under Title VII; the incidents of harassment must occur in concert or with a regularity that can reasonably be termed pervasive. Garvin v. Potter, 367 F.Supp.2d 548, 568 (S.D.N.Y. 2005). See Payami v. City of New York, 2007 WL 945529, *6 (S.D.N.Y.) (granting defendants' motion for summary judgment because plaintiff's claims of race-

based harassment did not rise to the level of a hostile work environment where he merely alleged "hostile and insulting remarks based upon his race").

A plaintiff claiming racially motivated hostility under Title VII must demonstrate that the conduct took place because of her race. See Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (holding that it is "axiomatic" that plaintiff's claim of a hostile work environment based on her sex must show conduct took place because of her sex); Carrero v. New York City Housing Authority, 890 F.2d 569, 578 (2d Cir. 1989) (conduct complained of must have been prompted by victim's status).

Plaintiff's claim of a racially motivated hostile environment is based on the following allegations: 1) she was asked by a supervisor to serve as a substitute teacher;[8] 2) she was told by one colleague that she should return to the classroom; 3) she was told by the same colleague that she was not "creative" and that she was "young;"[9] 4) she was subject, at times, to "boisterous" laughter when within sight of the same colleague; 5) she was not included in an eighth grade graduation ceremony in a manner she desired; and 6) she was "omitted" from various committee assignments.

None of these incidents is sufficient to establish an environment so beset with racial discrimination that they meet the criteria necessary to satisfy the test for a hostile work environment under Title VII. Plaintiff's claims show no relation to her race and amount to no more than what might be construed as unpleasant remarks and

---

[8]In her deposition, plaintiff acknowledged that substituting is within the job responsibilities of a Supervisory Vice Principal. Plaintiff's Depo., p. 96.

[9]Plaintiff admitted in her deposition that the fact that she was told to return to the classroom and that she was young was not related to the fact that she is an African American. Plaintiff's Depo., p. 36; p. 90.

disappointing but discrete conditions of her employment.  Summary judgment is warranted on this claim.

## 3.  State Law Claims

Pursuant to 28 U.S.C. section 1367(c)(4), the Court will decline to exercise its supplemental jurisdiction over plaintiff's state law claims because it has dismissed all claims over which it has original jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment [Doc. #25].  The state law claims are dismissed pursuant to 28 U.S.C. section 1367(c)(4).  The Clerk is instructed to close this case.

DATED this 2nd day of May, 2007 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge